(37 South. 17.)

No. 15,236.

MOORMAN v. PLUMMER LUMBER CO.*

(June 20, 1904.)

COMPROMISE—BINDING EFFECT—ESTOPPEL.

1. The parties entered into a contract by which the plaintiff, a sawmill owner, was to receive and saw lumber sent to him by defendant at $5 per thousand feet, as a consideration. It was stipulated between the parties that the contract should continue so long as it was satisfactory to each party, and that, in the event of its being unsatisfactory, the party dissatisfied was to give the other notice in advance, so that arrangements could be made for future sawing, etc. While the contract was being executed, the plaintiff became dissatisfied with the character of the logs sent to him, claiming that they were not such as it had been represented they would be, and he notified the defendant of his intention to terminate the contract. A conference took place between the parties, which resulted in a supplemental agreement that the price to be paid thereafter to the plaintiff was to be $5.50 per thousand feet instead of $5. The contract was then carried out to full execution, defendant paying, without complaint, on the basis of the supplemental agreement.

*Rehearing denied June 29, 1904.

The first complaint made was in the answer to this suit. The supplemental agreement was a compromise between the parties of really existing differences between them as to their respective rights and obligations.

2. The defendant having obtained, through a supplemental agreement, a continuance of the contract to full completion, which was to its advantage, could not, after obtaining the resulting benefit, repudiate the agreement.

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Eli S. Moorman against the Plummer Lumber Company. Judgment for plaintiff, defendant appeals. Affirmed.

T. Jones Cross, for appellant. Laycock & Beale, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff alleged: That the defendant, a Missouri corporation, was indebted to him in the sum of $4,100, with legal interest from January 1, 1904. That during the months of November and December, 1903, he sold and delivered to defendant company lumber as per statement to the amount of $2,218.98.

That on April 9, 1903, petitioner entered into a contract with said company to saw for them logs to be furnished by said company at $5 per thousand feet, which price was subsequently, to wit, on July 10, 1903, increased to $5.50 per thousand feet, of which price $3 per thousand feet cut was payable on the draft of petitioner at three days' sight when the lumber was measured and piled, and the balance on or before the 10th of the month next following the shipment; the lumber to be shipped out as soon as it was in good shipping condition, from 60 to 90 days from date it was cut; all of which will more fully appear by reference to said contract and agreement for increase of price, annexed and made a part of his petition.

That said company owed him the sum of

$270.80, being balance due on sawing 108,-374 feet of lumber delivered during the month of December, 1903; the sum of $126.12, balance on sawing 50,469 feet of lumber during January, 1904; and $1,550, balance due on sawing 620,000 feet of lumber then in his yards at his mill in the city of Baton Rouge, parish and state aforesaid, as would appear by reference to an account annexed and made a part of his petition. That nearly all of the lumber then on hand at his lumber yards had been there the full time contemplated by said contract, and petitioner, being crowded for room, was compelled, by the accumulation of lumber, to lease additional yard room. That $2,615.55 of the amount claimed in his petition was past due and unpaid, although payment thereof had been amicably demanded. That said company resided out of this state, as above alleged. That he verily believed that said company was about to mortgage, assign, or dispose of its property rights or credits, or some part thereof, with intent to defraud its creditors, or to give an unfair preference to some of them. That it was about to convert its property into money or other evidence of debt, with intent to place it beyond the reach of its creditors; and that a writ of attachment was necessary to protect his rights in the premises. That a curator ad hoc should be appointed to represent said absent defendant.

In view of the premises he prayed that a curator ad hoc be appointed to represent said company, and that said company and curator be cited to answer the petition.

That a writ of attachment issue to the sheriff commanding him to attach sufficient of the property of said company to pay and satisfy his claim.

That, after due legal proceedings had, he have judgment against said company for the sum of $4,166.01, with interest as claimed. That said writ of attachment be sustained, and the property seized thereunder sold, and his claim paid out of the proceeds thereof by privilege and preference; and for costs and for general relief. An order of attachment was ordered, and under a writ of attachment a quantity of lumber was seized by the sheriff.

Defendant answered, first pleading the general issue. Further, he then admitted that he entered into a contract of date April 9, 1903, whereby plaintiff was to saw logs for defendant at $5 per thousand feet, but specially denied that the pretended contract of July 10, 1903, increasing said price to $5.50, was a legal and subsisting contract of any binding force whatsoever. That said pretended contract was void for the following reasons: First, because it was without consideration; and, second, because the consent of defendant thereto was procured by threats and coercion, the said Moorman, at a time when defendant had a large number of logs either at the Moorman Mill or in transit thereto, and was under contract for the purchase, cutting, and transportation of a large number of others, declaring that he would not saw the logs of defendant at a less price than $5.50 per thousand feet.

That defendant had no other means of having these logs sawed, and, fearing a loss and damage that would have been ruinous, should he not be able to have said logs sawed into lumber by said Moorman, defendant was compelled to yield to said threat, and agree to pay the price demanded. That said consent was extorted for fear of meeting with a greater loss, was not freely given or voluntary, and the pretended contract resulting therefrom was therefore null and void. That while, by virtue of the written contract of date April 9, 1903, he was obligated to take lumber from the yards when in shipping condition, as defined by said contract, yet by a subsequent verbal contract this obligation was altered and amended, whereby said lumber was to be held by said Moorman un-

til ordered out by defendant; consequently the deferred payment for sawing charges was not due on such lumber as might be still in the hands of said Moorman.

In view of the premises he prayed that the attachment herein be dissolved, and plaintiff's demand be denied and rejected. He further prayed for costs and general relief.

The district court rendered judgment in favor of the plaintiff for $4,166, with legal interest from January 1, 1904, until paid, and costs, and further ordering, adjudging, and decreeing that the writ of attachment which had issued be sustained, and that the property seized be sold, and plaintiff's judgment be paid in principal, interest, and costs out of the proceeds thereof by privilege and costs.

Defendant appealed.

### Opinion.

Plaintiff admits that defendant was entitled to a credit on his claim of $609.80 as of date March 11, 1904, and that the omitting of said amount was an oversight in writing up the judgment.

On the 9th of April, 1903, a contract was entered into between the defendant and the plaintiff, who was operating a sawmill at Baton Rouge, by which the plaintiff was to receive defendant's logs at Baton Rouge, care for the same, cut them into lumber, pile and store the same, then load in cars, and was to receive a compensation of $5 per thousand feet of lumber.

On July 10, 1903, by supplemental agreement the price was fixed at $5.50 per thousand.

Plaintiff's demand is for $4,165.01. Counsel of defendant admits in his brief that the real matter in dispute is the portion of the amount claimed which results from supplemental agreement for the increased price which it is claimed was exacted from it by the plaintiff by reason of duress brought to bear upon it. Defendant cites in support of its defense New Orleans Gas Light Co. v. Paulding, 12 Rob. 378, and articles 1850, 1859, and 1863 of the Civil Code.

The contract of April 9, 1903, stipulated that it should continue so long as satisfactory to each party, and in the event of its being unsatisfactory both parties to give the other notice in advance, so that they could make other arrangements for future sawing, etc. Plaintiff agreed that, in case he notified the defendant that he intended to suspend the contract, he would saw up, pile, etc., as before, all the timber which he may have bought or contracted for with the view of his sawing. In other words, the parties agreed that they would not leave each other without a mill to saw the logs or without logs to work through the mill without notice.

After the plaintiff had received from the defendant two rafts of logs, he became dissatisfied with the character of the logs which had been sent to his mill, declaring that they did not correspond as to quality with those which defendant had represented would be sent to him. In consequence of the disagreement between the parties on this subject, the plaintiff, in July, 1903, gave the defendant notice that he would terminate the contract. The defendant, in consequence of this notice, sent one of its members to Baton Rouge to confer with the plaintiff. The result of the conference was the modified contract on July 9, 1903, of which the defendant complains as being exacted from it through duress. The district court refused to sustain this defense, and gave judgment for the plaintiff. We find no error in the judgment further than it was for an amount too large by the sum of $609.80, which was paid to the plaintiff after the institution of the suit, and which defendant, by inadvertence in drawing up the judgment, was not given credit for.

The modified agreement which was made between them was a compromise of really existing differences between them at that time. Defendant thought it to its interest to enter

into that compromise. It is too late now, after the work has all been done, for the defendant to urge that it "was exacted." It has made repeated partial payments to the plaintiff based upon the price fixed in the supplemental agreement. Mr. Plummer, who was sent to Baton Rouge in order to adjust the differences of the parties through a conference, being asked the question:

"Suppose at that conference you had told the plaintiff that the company would not agree to pay fifty cents? What was his proposition?" answered: "He did not put it in so many words, but in fact it was a laydown. 'I will saw if you give me fifty cents more; if you don't I won't. Q. Under those conditions, what did you do? A. I signed. Q. With the expectation, as stated in your testimony, that you would contest the amount in the last settlement? A. Yes, sir; and I made a report to my company accordingly."

This witness had previously stated, in answer to a question as to what was his intention in signing the supplemental contract:

"I intended to hold back the lumber which I considered had been obtained illegally, or to hold back the money on the last shipment in making a final shipment."

This intention was carried out, and the plaintiff testified that the first complaint he heard of the supplemental agreement was when the defendant's answer was filed.

The plaintiff, by reason of this supplemental agreement, was induced to give up the legal right which he had of discontinuing the contract. It was obviously (as Mr. Plummer himself states) to the interest of defendant that the contract should not be given up. After having availed itself of the benefit of this continuance, it cannot repudiate the agreement.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be amended by crediting the defendant as of date of March 11, 1904, with the sum of $609.80, and, as so amended, that the judgment appealed from be, and it is hereby, affirmed; costs of appeal to be paid by the appellee.