(48 South. 443.)

No. 17,114.

SHERIDAN v. REESE.

(Feb. 1, 1909.)

1. VENDOR AND PURCHASER (§ 21*)—PROMISE TO SELL—VALIDITY OF AGREEMENT.

A written promise of sale was signed to the defendant, promisee. It contained all the elements of a sale, save to the defendant was given time within which to comply with the terms and conditions of the agreement, and then the deed was to be signed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 21.*]

2. PAYMENTS ON PRICE.

The plaintiff accepted amounts paid on the price.

3. VENDOR AND PURCHASER (§ 214*) — CONTRACT OF SALE—TRANSFER BY VENDEE.

The promisee acquired a right to the property, subject to the condition expressed, which he could sell.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 442, 443; Dec. Dig. § 214.*]

4. VENDOR AND PURCHASER (§ 214*) — CONTRACT — TRANSFER BY VENDEE — ACQUIESCENCE.

The plaintiff consented to the conveyance made by the promisee to the defendant.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 214.*]

5. VENDOR AND PURCHASER (§ 214*) — CONTRACT — CONDITIONS — TRANSFER — SPECIAL SKILL IN VENDEE.

The personal grounds urged as precluding the promisee from selling are not sustained by the facts, and are not supported by the terms of the Code; the alleged special skill expected by the plaintiff finds no support in law or fact.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 214.*]

6. PARTNERSHIP (§ 53*)—EVIDENCE TO ESTABLISH.

The contemplated partnership was not formed. It never had any right to any amount paid by defendant on the written agreement referred to as the "Toomer contract."

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 53.*]

7. AMOUNT OF DAMAGES.

The question of damages raised not considered in this case.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Thomas Moore Burns, Judge.

Action by Daniel E. Sheridan against Samuel E. Reese. Judgment for plaintiff, and defendant appeals. Reversed.

See, also, 121 La. 226, 46 South. 218.

Thomas E. Salter, Prentiss Bernard Carter, and Benjamin Moore Miller, for appellant. Gayer & Ott, for appellee.

BREAUX, C. J. Proceeding by injunction, plaintiff seeks to hinder and stop the defendant from felling and taking timber from the land he claims.

The statement of the case begins with a written agreement entered into by plaintiff, Sheridan, with Judson R. Toomer, in which the former sold the land in question to the vendee above named for $26,074.14, to be paid on estimated stumpage of timber standing on the land, at the rate of $6 per thousand feet, which the buyer was to manufacture into lumber at his sawmill on the land. This price was to be arrived at, and the deal consummated, immediately after the payment just stated.

The vendee agreed to own a sawmill on the land, and it was further agreed that he would begin operations of the sawmill by the 1st of June, 1907. With this agreement he complied.

Toomer agreed to complete the cutting and manufacture of the timber within 12 months from the date he would begin; and he fur-

ther agreed to assign all invoices and bills of lading, representing the timber cut from the land, to the bank of Franklinton for collection, and to be credited to plaintiff. The mill on the land was to remain as a security for performance of the contract.

The agreement was recorded in the conveyance book of the recorder's office.

Toomer, the vendee, assigned all of his rights to the defendant on the 3d day of January, 1908.

We pass for a few moments to the pleadings. We will return to the summary of the facts later.

Plaintiff in his petition for an injunction alleged that on the 3d day of June, 1908, he and defendant formed a partnership to operate a sawmill; that defendant, Reese, was to buy the sawmill of one Gary, and was to saw the trees on the same terms as those mentioned in the Toomer contract.

Plaintiff states that upon his demanding a statement which defendant had promised to give him he met with a refusal from defendant; that he then informed defendant, since it was not considered that there was a partnership, as he contended there was, he must stop cutting plaintiff's timber; that thereafter defendant proposed to enter into an agreement with plaintiff, and, after discussing the terms and the conditions, there was an agreement arrived at, viz., it was agreed that the contract agreed upon be reduced to writing. Plaintiff wrote the agreement, Reese refused to sign it. Plaintiff then notified defendant that he withdrew from all contracts between them.

Plaintiff testified that defendant would not discontinue cutting timber on the land in question unless enjoined; that Reese claimed the right to continue operations of the sawmill under the terms of the agreement entered into between plaintiff and Toomer in April, 1907, which the latter and John H. Gary, plaintiff said, attempted with his knowledge to assign to defendant, Reese, on the 5th of January, 1908; that if, to quote from the petition,

"any valid assignment of said contract was made, which petitioner denied, the same was made to the partnership which existed between plaintiff and defendant."

Plaintiff also stated that if there was an agreement it had been repeatedly violated, because Toomer failed and neglected to begin operations by the 1st of June, 1907, as originally agreed upon; that he had not complied with his obligation by delivering invoices and bills of lading to the bank for collection; that the attempted assignment was, in itself, a violation of the contract referring, as we take it, to the verbal agreement which was to be reduced to writing, but which defendant refused to sign.

The complaint is further that since the attempted assignment on the 3d day of January, 1908, although defendant has manufactured and shipped a quantity of feet of timber he has never complied with the stipulations of the contract. That in all their dealings the Toomer contract was not mentioned. Reese always proposed to transact with him, plaintiff.

Plaintiff then resorted to the court for an injunction and to assert the right he claims.

The defense of Reese is that he holds under the Toomer contract; that the land and timber were sold by plaintiff to Toomer, in April, 1907, and by him, defendant, they were bought on January 1, 1908, plaintiff actually acting as an intermediary and agent.

Defendant denies that there ever was a partnership entered into by him with plaintiff, but admits that there was a tentative agreement between them to form a partnership for the manufacture and sale of lumber—plaintiff to furnish one-fourth of the necessary funds to operate the business, and to receive one-fourth share in the profits. He was also to receive one-fourth of the purchase price of.

the mill bought by defendant from John H. Gary. That plaintiff refused to advance any part of the amount mentioned above. That in consequence the partnership fell of its own weight, and respondent paid the full price for the mill, and furnished all funds for operating expenses.

The defendant's further contention is that he has paid plaintiff for all the lumber cut and shipped under the Toomer contract, and that he has complied with the terms and conditions of this contract. That the assignment was not made by Toomer to the partnership, as contended by plaintiff, but to him, defendant; that the plaintiff received payment for all the timber cut and shipped at the rate stipulated.

Defendant claims damages in the sum of $5,225.

Issue having been joined, as shown by these pleadings, testimony was taken.

We applied ourselves to making a summary of the facts, as we above said we would.

Plaintiff testified that it was agreed to form a partnership between him and the defendant.

It happened that on January 3, 1908, he was at Rio station, where the mill subsequently bought by defendant is located. On that day defendant met plaintiff.

Before that time—that is, on the 5th of April, 1907—the plaintiff had entered into the Toomer agreement, as before stated.

Plaintiff was interested in pine lands as an owner, and defendant wished to buy a place to locate a sawmill.

Very soon after meeting, they began talking about a mill location. They went over the grounds at some length, even stepped over to the sawmill property of John H. Gary, who was working under the Toomer agreement and sawing the timber conditionally transferred by plaintiff to Toomer.

The parties, plaintiff and defendant, thought, as we infer, that the mill operations at the Gary mill would pave the way to forming a contract of partnership.

In addition, a sale was spoken of; plaintiff said to the defendant that the Toomer contract was in the way of his selling.

No contract of partnership was signed.

The defendant testified that he had not signed and had not undertaken to carry out the terms and agreement of the contemplated partnership because plaintiff had not performed his part of the agreement; that he was to furnish cash to effect the purchase of the Gary mill, and was to perform other conditions of minor importance. This he failed to do. Defendant bought the mill.

Whatever there may have been connected with this embryo partnership, it never was considered as a concluded contract. Nothing ever came of this partnership; plaintiff and defendant disagreed about it, and nothing was done.

Plaintiff testified as to his understanding of the agreement to form a partnership, and defendant as to his. The result was conflicting testimony which proves nothing, being testimony of parties to the suit of about equal standing, so far as we know. Besides, the agreement was that the contract of partnership would be written. This was in its nature a condition precedent without which there could be no partnership.

Our only reasons for referring to this contemplated partnership is that the plaintiff's contention that, if he seemingly sanctioned the sawmill operations by defendant under the Toomer agreement, it was not that he thought that the defendant was carrying out the terms and conditions of the Toomer contract, but because, as he thought, the defendant was his partner, and that, in accounting as he did, he had reason to believe that the work was done under the partnership, and not under the Toomer agreement; that he received the amount paid for account of the partnership.

As there was no partnership, the credit which the plaintiff seeks to give to it instead of to the Toomer contract can be of no avail in this suit. He could not place the amount to the credit of a nonexisting partnership. The fact is that there was no partnership, not even in name.

### The Agreement of the Toomer Contract.

That presents the serious issue of the case.

The original contract with Toomer, the contract assigned, was as complete as such a contract could be made. It contains all the essentials of a sale, except that it was agreed that the deed itself would be signed after payment of the price. The defendant, realizing, perhaps, that he must hustle in order to be equal to the performance of his part of the contract, seems to have been anxiously active to unload the weight of his obligation. He, with the consent of plaintiff, sold his right under the contract to John H. Gary, who constructed a sawmill to the end of carrying out the agreement under the Toomer contract. The contract transferred was a complete promise to sell. It was a strong and positive promise to sell. The property had been delivered to the promisee, and it remained for him to operate the mill under its terms and conditions. There was a complete agreement; object and price were clearly stated, and the defendant, as well as his predecessor, from all appearances endeavored to earn the price in accordance with the agreement.

It fell squarely within the terms of article 2462 of the Civil Code relating to a promise to sell. The promise to sell had been clearly given by the plaintiff, and had been clearly accepted by the defendant's predecessor in right.

The next proposition for discussion is whether the promisee, Toomer, had the right to assign his contract, although plaintiff did not sign the written agreement.

In our opinion, Toomer had acquired a right which he could assign. He, as before stated, assigned his right under the agreement to John H. Gary, who became subrogated to it with the sanction of plaintiff.

Plaintiff's assent is mentioned in the testimony as a "permission"; that the plaintiff had given his "permission."

Plaintiff consented to the assignment, whether called assent, permission, or sanction. The evidence on this point leads to that inevitable conclusion.

We quote from the testimony of plaintiff on this point:

"Some time in August, if I remember right, Mr. Toomer came to me and said that he wanted to sell the mill to Mr. Gary, and asked me if it would be satisfactory if Mr. Gary should take the contract. The mill then was finished and completed, and he, Gary, operated a while supposing to be under the contract.
"Q. With your permission?
"A. Yes, sir."

On the 3d of January, Toomer sold and transferred all their rights under the Toomer contract to defendant.

Plaintiff states as a witness that he talked "the matter" over with defendant as to how the contract was to be drawn.

We quote from the testimony:

"Q. Mr. Sheridan, when this contract or assignment from Mr. Toomer and Mr. Gary to Samuel E. Reese was drawn and signed on the 31st day of January, were you present?
"A. No, sir, I was not.
"Q. Were you present at the beginning of the contract?
"A. I did not think the contract was started. I was there and talked the matter over with Dr. Reese as to how the contract was to be drawn with Toomer and Gary; there was nothing said about the timber contract, or transfer either."

There was only one transfer made. It included all the rights, whatever they were, under the original contract. It must have included timber and "transfer" as well.

Defendant fully confirms the statement of plaintiff, and expressly states that plaintiff made the contract with Toomer and Gary for him.

Plaintiff before the assignment said that he would not consent to let the work be done under the Toomer contract unless the defendant bought the Gary mill.

To comply with this condition, the defendant bought the mill, and about the same time bought such right as Toomer and Gary had.

Another of plaintiff's grounds against the validity of the assignment is that the contract between him and Toomer was personal, and he seeks to bring it within the provisions of article 1837 of the Civil Code.

He thought, as testified to by him, that Toomer had special skill and ability to perform his part of the contract

The weak point, as relates to a question of fact here, is that plaintiff had given his consent to Toomer to assign the contract to Gary, and that in consequence he is not in a position to invoke the cited article supra.

There are letters in the record of a date subsequent to the assignment in which plaintiff inquires about defendant's business, and in one of these letters he somewhat insistently asked for the remittance by defendant of amount due on stumpage under the Toomer contract. Another request to remit stumpage was made as late as February 1, 1908, a month less than two days after the date of the assignment on January 3d.

It was plaintiff who advised defendant to buy the Gary mill to the end of sawing the timber that the first assignee had promised to saw under the Toomer contract.

The mill had been put up mainly to cut plaintiff's timber.

Plaintiff accepted the benefit the contract afforded. He must be held bound by it. Moorman v. Lumber Company, 113 La. 429, 37 South. 17.

Both plaintiff and defendant offered parol testimony, and the issues took such a turn while the witnesses were testifying that there is scant ground for holding that the verbal testimony should not have been admitted.

But even if, technically speaking, parol testimony (and that is not manifest) was not admissible, the defendant having gone into possession of the property, and was invoking under the terms of his contract, parol testimony was admissible to the extent admitted.

Now as to damages: The defendant in effect concedes that his proof is not in all respects as complete as it should have been.

He asks, after allowing damages proven, that his right be reserved him to claim further damages.

Damages vel non should not be tried piecemeal.

We, therefore, will reserve to defendant the right to claim and prove such damages as he may have suffered.

The law and the evidence considered, it is ordered, adjudged, and decreed that plaintiff's demand is rejected and his injunction dissolved in both courts.

It is further ordered, adjudged, and decreed that defendant's right to sue for and recover such damages as he may be entitled to be reserved.