LAND, J.
This is a sequel to the suit of Sheridan v. Reese, 122 La. 1027, 48 South. 443, in which the injunction sued out by the plaintiff was dissolved, and the defendant’s right to sue for and recover damages occasioned by the injunction was reserved.
The present suit was brought to recover damages in the susn of $31,124.04, itemized as follows, to wit:
1.The difference between $6 per thousand feet (the price stated in the contract) and $3 per thousand feet (the value of the stump-age) on 291,000 feet of lumber manufactured and paid for by him, or $3 per thousand feet on 291,000 feet, amounting to $873.
2. The amount paid by him on account of' •the purchase price of the sawmill bought from Gary, $2,341, and the value of the buildings erected by him in connection with the mill, $919.06, making $3,260.06, which he was unable to pay for because of the issuing of the injunction, and which were seized and sold.
3. Loss of 237,000 feet of lumber, worth $16 per thousand, which was seized and sold by Sheridan, and in which Sheridan had, after violating the contract, an interest of only $3 per thousand, the value of the stumpage, making $13 per thousand on 237,000 feet, or $3,081.
4. Cost of feeding 50 oxen for 16 days while the mill was. closed by the injunction, at $12.60 per day, $195.60.
5. Wages paid during these 16 days, $176.
6. Loss of oxen, which were seized and sold because plaintiff could not pay the amount he owed on them, $1,200.
7. Loss on contract to furnish lumber caused by the injunction and shutting down of the mill, $86.
8. Traveling expenses, etc., incurred in attending court and defending the injunction suit, $247.
9. Attorney’s fees, $1,000.
10. Destruction of plaintiff’s financial credit, standing, and reputation, $10,000.
11. Humiliation, distress, and anguish of mind caused by the injunction and the consequent destruction of his business and loss of his property, $5,000.
The district judge rendered judgment for the plaintiff for $1,250. The defendant appealed.
Counsel for plaintiff and appellee state in their brief that they filed, in this court, an answer to the appeal, praying that the judgment be amended by increasing the award of damages. No such answer is in the tran *10 script before ns, or is noted on the docket.. Hence the judgment cannot be amended in favor of the plaintiff and appellee. Code of Practice, art. 889.
[1] Defendants have filed in this court a plea of prescription of one year, and contend that this action should have been brought within one year from the date the injunction was obtained, February'26, 1908. In the injunction suit, filed February 25, 1908, Rees in his answer claimed damages in the sum of $5,225 for stoppage of his mill, personal loss of time and expenses, damages to his business, credit, and reputation, attorney fees, and worry and annoyance. This reconventional demand was pending in the courts until the judgment of the Supreme Court became final on February 16, 1909.. The present suit was instituted on January 31, 1910, against D. H. Sheridan and the sureties on his injunction bond. It is well settled that a reconventional demand interrupts prescription, and the interruption necessarily continues until the termination of the action. See Driggs v. Morgan, 10 Rob. 119. It also has been held that actions for damages on injunction, and other bonds, are not prescribed by one year. Revert v. Sharpe, 52 La. Ann. 602, 27 South. 64; Rogay’s Case, 25 La. Ann. 307; St. Geme’s Case, 117 La. 233, 41 South. 557.
[2] The injunction against the use of the timber contracted for by the plaintiff caused the shutting down of the sawmill, as he could not buy other timber available for the purpose of manufacture. The enforced closing of the plant not only deprived the plaintiff of the beneficial uses of his investment, but destroyed his credit, and caused the sac-' rifiee of his property. Plaintiffs’ testimony shows pecuniary loss and damages exceeding by far the amount allowed by the judge a quo. In addition, plaintiff was entitled to his attorney fees for dissolving the injunction. Mr, Salter, an attorney at law, at Purvis, Miss., who was well acquainted with plaintiff’s financial condition and standing prior to the injunction, testified that plaintiff owned in Mississippi property worth about $16,000, and owed about $6,000; that plaintiff’s credit was good; that the injunction caused plaintiff’s creditors to sue and obtain judgments against him; that all of plaintiff’s property, except his homestead, was “swept away by the issuing of the injunction”; and that the injunction proceedings “absolutely destroyed” plaintiff’s credit. According to plaintiff’s testimony, he made considerable profits from his sawmill prior to the injunction. As to the conflict of testimony between the plaintiff and the defendant, in this and other matters, the trial judge seems to have given credit to the former.
In Byrne & Co. v. Gardner & Co., 33 La. Ann. 8, it was held that damages actually sustained comprise not only pecuniary loss and actual expenses incurred, such as costs and counsel fees, but also the mortification, annoyance, and vexation caused to the defendant by the attachment. In the same case the court quoted Sedgwick on Damages, p. 35, but held that the evidence did not show loss of credit or loss of business. The general rule is that damages are the amount of the loss the creditor has sustained or of the gain or profit he has been deprived. Civil Code, art. 1934.
Our opinion in Sheridan v. Reese, 122 La. 1027, 48 South. 443, shows that there was no foundation in fact for the injunction, and that such equitable remedy was abused. In such a ease, the damages are not restricted to counsel fees and costs.
We are satisfied that the evidence shows an actual property and pecuniary loss to the amount awarded by the trial judge, if not more.
Judgment affirmed.