STANDARD ELECTRIC CONSTRUCTION CO. v. FRICK CO., INC., ET AL.

(April 27, 1931. Opinion and Decree.)

H. L. Hammett, of New Orleans, attorney for plaintiff, appellee.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for defendants, appellants.

WESTERFIELD, J. The Frick Company, Inc., a foreign corporation, entered into a contract with the French Market Ice Company, Inc., for the erection of an ice-manufacturing plant in their property No. 1024 Chartres street. The Standard Electric Construction Company, Inc., agreed to furnish and install certain electrical equipment, wiring, and machinery in connection with the execution of this contract for the sum of $1,555. A dispute arose between the Frick Company and the Standard Electric Construction Company as to the extent of the latter's undertaking with the result that the Standard Company declined to execute its contract in accordance with the understanding of the Frick Company unless $720 was added to the original contract price of $1,555. After considerable correspondence in which both sides insisted upon the correctness of their respective contentions, the Frick Company, for reasons which to it appeared sufficient, yielded to the Standard Company and agreed to pay it the additional $720, and, upon a basis of this adjustment of the controversy, the Standard Company finished the work to the satisfaction of the Frick Company, and all compensation due it under the contract, except the $720, was paid. That amount was withheld by the Frick Company upon the ground that the agreement to pay it was without consideration.

The contract between the Frick Company and the French Market Ice Company was not recorded, nor was any bond required; consequently, in bringing this suit against the Frick Company, the French Market Ice Company was made a party defendant, and judgment asked against it in solido with the Frick Company under familiar provisions of the building laws.

There was judgment below in plaintiff's favor as prayed for with recognition of a lien and privilege upon the building of the French Market Ice Company, Inc., and from that judgment both defendants have appealed.

The question for our determination, one of fact, is whether the plaintiff arbitrarily declined to execute an agreement without the payment of additional compensation. It is not necessary in our view that plaintiff should establish his rights to the additional amount with the usual legal certainty that would be necessary in the absence of the defendant's promise to pay it, because the presumption is that defendant's offer to pay was supported by a proper consideration, and, unless the same was arbitrarily demanded, it must be considered as an adjustment by way of compromise of differences between the parties. R. C. C. arts. 3071 and 3078.

The position of the defendant is that the promise to pay the additional amount demanded by the plaintiff was unsupported by a valid consideration, since the work for which the sum was demanded was within the contemplation of the original contract. Article 1893 of the Civil Code declares that:

"An obligation without a cause, or with a false or unlawful cause, can have no effect."

In Monroe Investment Co. v. Ford, 168 La. 475, 122 So. 586, 587, it was held:

"A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule,

the performance of, or promise to perform, an existing legal obligation, is not a valid consideration." 13 Corp. Juris, 351 (Contracts) sec. 207. See, also, Moorman v. Plummer Lumber Co., 113 La. 429, 37 So. 17.

Turning to the record we find that the plaintiff's bid was dated June 27, 1928, and embraced the necessary wiring connections between certain units of electrical machinery when installed in the French Market Ice Company plant. It is claimed that this bid was based upon a sketch procured by a representative of the Frick Company and handed to plaintiff for the purpose of estimating the cost of the work, and that it showed the original area of the building to be 80 feet by 20 feet, and that subsequently, and shortly before the time for plaintiff to begin the work, a blue print was submitted by the Frick Company which showed that the wire connections were to be made with machinery which occupied an area of 80 feet by 132 feet, and that this additional space required more wiring and increased the cost of doing the work to the extent of $720.

Defendant denies that a pencil or other sketch was ever procured by their agent or given to plaintiff for the purpose of formulating its bid. The sketch was never produced, but three witnesses testified to its existence. One of them, a totally disinterested witness, claimed to be the author of it and to have given it to plaintiff at the request of the defendant's representative. In addition, there is in the record a telegram from the Frick Company's office in New Orleans to the main office in Waynesboro, Pa., under date of January 28, 1929, reading as follows:

"Reference French Market Stop Standard Electric Startin· work according to original sketch and contract with no regard to present location of generators and switchboards which will not fit present locations or apparatus and will be absolute loss to us. Stop Standard informs us will withdraw extra price by two pm if not notified and will proceed as above stop Recommend that work be started correctly and wire him to start as new contract immediately as will mean bigger loss of time and money with both contractor and customer."

This telegram tends to confirm the position of plaintiff by referring to the "original sketch and contract" and to a "new contract," clearly implying that there was a preliminary plan exhibited to plaintiff, and that the original contract had been changed. Moreover, during the interval in which the controversy for the additional price was going on, the Frick Company obtained other bids from other contractors in the city of New Orleans, which, when compared with the bid of plaintiff, including the $720, were each of them found to be considerably higher.

Upon the record before us it must be conceded that the predicate of defendant's position has not been established. It has failed to show the unreasonable character of the plaintiff's demand; consequently its agreement to pay plaintiff must be held to be a compromise of differences and not a gratuitous undertaking. The suggestion that there was coercion by reason of a threat by the plaintiff to lien the building and because of the delay which would ensue in the execution of defendant's contract with the ice company, involving them in a possible action for damages, if true, cannot affect the situation, for plaintiff was within its rights in insisting upon what it deemed to be a proper concession no matter what inconvenience it might cause the defendant in the execution of its contract.

For the reasons assigned, the judgment appealed from is affirmed.