BEER, Judge.
Plaintiff-appellee, Robert T. Bagby (hereafter, Bagby) and defendant-appellant, Donald A. Clark (hereafter, Clark) perfected an agreement on August 8, 1973 whereby Bagby agreed to sell Clark four lots in St. Charles Parish for $14,000 on or before September 30, 1973. They used a *634 printed form of agreement apparently prepared for the use of Walker Land Company, Inc. (not in any way involved in this litigation), making various insertions to suit their purposes. The agreement provided that Clark would pay $3,500 in cash, the balance ($10,500) “to be financed by International Land Company for five years at eight percent interest.” Concurrent with the signing of the agreement, Clark executed a note, payable to Bagby on September 30, 1973, in the amount of $3,500. The act of sale was never passed and Bag-by sued Clark on the note. From a judgment in favor of Bagby, Clark appeals.
Clark resists Bagby’s claim on three grounds: (1) there was a failure of consideration for the note; (2) under the terms of the agreement, he had the right to rescind because of technical noncompliance with certain provisions of the agreement dealing with federal regulations; and (3) he was not put in default for noncompliance with the agreement to purchase.
LSA-R.S. 7:24 provides:
“Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.”
By execution of the note Clark reserved the right to purchase the property from Bagby up to the date designated for the act of sale. Bagby was obliged to take the lots out of commerce and deliver title by September 30, 1973. Thus, there was apparent consideration for the note when it was executed. We pretermit discussion as to any subsequent failure of consideration in view of our holding on the issue of putting in default which will be discussed in the following paragraph. 'Likewise preter-mitted is the issue of technical noncompliance with certain provisions of the agreement dealing with federal regulations.
We conclude that the record will not support a finding that Clark was properly put in default with respect to the passage of the act of sale contemplated by the purchase agreement and, accordingly, the parties must be returned to the status which existed prior to the execution of the expired agreement.
The record shows that although the agreement was executed on August 8, 1973 Bagby did not acquire ownership of the lots in question until September 25, 1973. This fact, standing alone, would not be particularly important. Yet, knowing all along that only five days would remain to pass the act of sale after his acquisition of the property, Bagby consistently dealt with Clark on a totally informal basis. Around the middle of September he advised Clark by telephone that he would like to pass the act of sale on September 28. However, Clark, a pilot, later learned that he was to be “on call” to fly for his employer on the dates of September 28 through September 30. No correspondence of any description is even alleged to have passed between the parties or their representatives until October 2, 1973 (after expiration of the agreement) when Bagby left a note addressed to Clark in the employees’ mailbox at Delta Airlines. The note suggested that they try to set up an appointment for the act of sale on October 4, 1973. Nevertheless, up to and including the 30th of September, no written exchange regarding the setting of the act of sale ever took place. Thus, even though there is testimony to indicate that the September 28 date was tentatively agreed upon as the date for the sale as early as the middle of September (even though Bagby had not yet acquired title to the land) that date was unconfirmed by letter and subsequently upset because of Clark’s being on call by Delta Airlines.
On September 27, when Clark found that he was to be on call he telephoned the office of Mr. William J. Luscy, III, Notary Public,[1] and informed Mr. Luscy’s secre *635 tary of that fact. No evidence appears in the record to refute his testimony to this effect. Mr. Luscy testified that he had no exchange of correspondence of any nature with Clark prior to the termination of the purchase agreement but that he did speak by telephone to someone who he believed to be Mr. Clark on the morning of September 28 at which time the party on the other end of the line stated that he did not want the property in question and was not coming to the act of sale. However, there is some question as to Clark’s whereabouts on the 28th and much doubt on our part as to the evidentiary value of this testimony.
Indeed, the entire record has the positive effect of underlining the cogent observations of Judge Lemmon in Alley v. New Homes Promotion, Inc., 247 So.2d 218 (La.App. 4th Cir. 1971) writ refused, 258 La. 972, 248 So.2d 832 (1971) when he stated:
“In order to activate the penalty clause in this contract, the seller must make a formal tender of title. In other words, the seller must tender title by formally tendering performance. Without the requirement of a formal tender of title, each party could let the time period expire and each could contend in a swearing contest at trial that he was ready and willing to perform within the contract period. The language of the contract clearly negates a theory of the purchaser automatically being in default by failing to perform. Indeed, implicit in the requirement of tender of title by the seller in order to impose the penalty is failure by the purchaser to take title. The purpose of the tender is to put the purchaser on notice that failure to perform his obligation under the contract will subject him to forfeiture of his deposit.”
(Emphasis ours.)
LSA-C.C. Article 1911 provides:
“The debtor may be put in default in three different ways: by the term [terms] of the contract, by the act of the creditor, or by the operation of law:
“1. By the terms of the contract, when it specially provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure.
“2. By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.
“3. By the operation of law. This takes place in cases where the breach of the contract alone is by law declared to be equivalent to a default. The law having declared that the neglect to return a thing loaned for use, at a stipulated time, or the application of it to another use than the one for which it was lent, puts it at the risk of the borrower; this, without any act of the lender, puts the borrower in default, and forms an example of this part of the rule.”
We do not find compliance with the applicable provisions of the Code sufficient to permit recovery by Bagby. See Fortenberry v. Decay, 279 So.2d 725 (La.App. 1st Cir. 1973). Specifically, there was no formal tender of title as provided for in the agreement.[2]
The suit on the note should have been dismissed even though the note itself was complete and regular on its face. The note was, in fact, no more or less than a deposit which, under the circumstances of *636 this case, should have been returned to Clark after September 30, 1975.
Bagby’s brief makes the observation that Clark was “in default under the terms of the written contract,” but this assumption is not supported by the record.
The applicable terms of the agreement are as follows :[3]
“Act of sale, closing costs and prepaid items at expense of purchaser to be passed before Lender’s Notary, on or prior to Sept 30 1973, provided that if bona fide curative work in connection with title is required, the parties herewith agree to and do extend the time for passing of act of sale by thirty days.
“Seller and purchaser shall be bound by all its terms and conditions and purchaser is obligated to deposit with seller’s agent immediately 25% of the purchase price amounting to $3,500.00.
“This deposit is to be non-interest bearing and may be placed in any bank in Metropolitan New Orleans, without responsibility on the part of the agent in case of failure or suspension of such bank.
“The seller shall deliver to purchaser a merchantable title, but subject to all conditions etc. set forth in Seller’s act of purchase and inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the.right to demand the return of the deposit from the holder thereof.
“In the event the seller fails to comply with this agreement within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto forfeited, without formality beyond tender of title to purchaser or the seller may demand specific performance.” (Emphasis ours.)
Thus the formality of tender was specifically preserved in the agreement, but, thereafter, ignored by plaintiff-appellee.
For these reasons, the judgment of the Twenty-Fourth Judicial District Court, Parish of Jefferson, must be reversed and there will be judgment herein in favor of Donald A. Clark, defendant-appellant, and against Robert T. Bagby, plaintiff-appellee, dismissing plaintiff-appellee’s suit at his cost.

Reversed and rendered.

. Not only was there no correspondence (registered mail or otherwise) confirming the date, time and place of the proposed act of sale, there was no written confirmation (witnessed or unwitnessed) of the alleged tender or of the alleged rejection of the tender.

. This was essentially the same language contained in the agreements in Alley, supra, and Fortenberry, supra.