BARRY, Judge.
On July 28, 1977, a purchase agreement was executed between Leonard J. Bordelon, seller, and Ronald E. Kilcrease, buyer, for two lots in Ormond Estates in St. Charles Parish. On April 12, 1978, Kilcrease executed an act of assignment in favor of Joseph C. Lusher to purchase the lots. The assignment adopted the provisions of the agreement to purchase between Bordelon and Kilcrease and was subject to two additional provisions:
“Lot must qualify for a 4-plex permit.”
“Predicated on lot financing only.”
The purchase agreement between Borde-lon and Kilcrease had a sales price of $37,-200.00 with $1,860.00 cash and $1,860.00 by promissory note, or $3,720.00 representing a 10% deposit on the purchase price. The act of assignment between Kilcrease (assignor) and Lusher (assignee) valued the two lots at $48,600.00; a consideration of $13,260.00 was provided in the assignment consisting of $1,860.00 cash, a $1,860.00 promissory note, and the balance of $9,540.00 at the act of sale, plus $35,340.00 to be financed.
Plaintiff’s lawsuit for return of the “deposit” was based upon his alleged inability to obtain financing for the lots. Defendant’s answer alleged that plaintiff failed to make a good faith effort or use due diligence to secure the financing. Defendant filed a reconventional demand for payment of the $1,860.00 note. A general denial was filed by the defendant in reconvention, and his answer to the reconvention was later supplemented to allege that the lots were not suited for the purpose originally contracted for and that the assignor failed to tender title or place assignee in default thereby causing the assignment to lapse.
The District Court dismissed plaintiff’s main demand and rendered judgment in favor of the plaintiff in reconvention (assignor) and against the defendant in recon-vention (assignee) in the sum of $1,860.00 plus 8% per annum interest and 15% attorney fees as provided in the promissory note, and for all costs.
Questions presented are:
(1) Is plaintiff entitled to return of the $1,860.00 cash payment and cancellation of his demand note because of inability to secure financing for the lots?
(2) Was the property in such a condition that it was unsuitable for plaintiff as originally contracted for?
(3) Was the assignor required to tender title or place assignee in default under the provisions of the original purchase agreement or the act of assignment?
(4) Did the purchase agreement provide a specific date for transfer of title?
I.
As this court has previously stated in referring to the sale of real property: “Whether or not a party has acted in good faith depends on the facts and circumstances peculiar to each case.” Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir., 1976). The record reflects that assignee went to a bank to secure financing but apparently never followed through on his loan application. Four months later he applied to another bank which denied the loan. No other effort was made to fund the transaction. As-signee’s original petition was based upon his inability to secure financing, however, this claim was not raised on appeal and is therefore considered abandoned.
II.
Assignee objected to the condition of the lots which he apparently felt precluded construction of 4-plex units. No question is raised concerning zoning restrictions to build 4-plex units. The assignee testified *591 that he could not inspect the land prior to signing the assignment because the property was inaccessible by automobile. This testimony was contradicted by the owner, Mr. Bordelon (not a litigant herein), who testified that the road leading to the property had been filled and the streets cleared. Apparently the assignee did not attempt to inspect the property before signing the act of assignment, but upon subsequent inspection he became concerned about the existence of a drainage ditch (which was later filled) that crossed the property and was certainly visible at all times.
It should be noted that assignee makes no claim of redhibition. The “deplorable” condition of the land was raised only in the supplemental answer to the reconventional demand. LSA-C.C. Art. 2521 provides “Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.” The Supreme Court held in Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (La.1963) that redhibition does not apply where the defect was apparent and could have been discovered by simple inspection. See: Cash v. Hight, 357 So.2d 373 (La.App. 4th Cir., 1978); Bernofsky v. Schwartz, 370 So.2d 590 (La.App. 4th Cir., 1979).
Furthermore, if the pleadings could be construed to assert a viable claim of redhibition, such claim as made against the assignor must fall. An act of assignment warrants only the existence and peaceable possession of the right to purchase; it does not warrant against physical defects in the object to which the right relates. Cryer v. M & M Manufacturing Company, Inc., 273 So.2d 818 (La.1973).
III.
Appellant cites two cases which set forth the requirement of formal tender of title in order for a vendor to retain or forfeit a deposit. Alley v. New Homes Promotion, Inc., 247 So.2d 218 (La.App. 4th Cir., 1971); Bagby v. Clark, 327 So.2d 633 (La.App. 4th Cir., 1976). Both cases involve agreements to purchase and not an act of assignment as here.
An act of assignment is the sale of an incorporeal thing under LSA-C.C. Art. 2449.[1] The Supreme Court of this state has long recognized the assignment of rights in exchange for cash consideration. See: Sheridan v. Reese, 122 La. 1027, 48 So. 443 (La.1909); Young v. Cistac, 103 So. 100 (La.1925); Cryer v. M & M Manufacturing Company, Inc., 273 So.2d 818 (La.1973). The effect of an act of assignment is to transfer the assignor’s rights in the original agreement in favor of the assignee. Since the assignee assumed all of the rights of the assignor as provided in the purchase agreement, the assignee would certainly then be in a position to assert against the seller that title must be tendered or that the assignee must be placed in default for nonperformance. However, the assignee chose to sue the assignor, not the seller. It was impossible for the assignor to tender title to property which he clearly did not own; the thing sold was the right to purchase, not the land. Cryer, supra.
IV.
The purchase agreement provided that the sale was to take place “not later than 30 days after acceptance of development and all offsite improvements by St. Charles Parish.” There is no date in the transcript when the St. Charles Parish Police Jury accepted the improvements; however, the land owner, Bordelon, did testify that the improvements were accepted approximately three months after the date of the act of assignment and assignee was notified.
We take notice that it is common business practice for land developers to enter into sales agreements predicated upon the property being improved prior to the act of sale. These sales agreements are then used to provide collateral to secure financing. This *592 type of agreement protects purchasers from buying property until the developer completes improvements.
Plaintiff’s original demand was based upon his inability to secure financing. As defendant in reconvention his answer was a general denial. Later, in answer to the supplemental and amended reconventional demand, he “further answered” to aver the poor condition of the property and that title was never tendered and the original contract expired. No mention is made in the pleadings concerning lack of a specific date to transfer title. The issue of a specific date was first mentioned in defendant in reconvention’s brief on appeal. This contention is without merit for the reasons stated above.
Apparently Mr. Lusher wanted to purchase land at a time when it may have been economically feasible but, because of market conditions and inflation, later found that it was impractical to proceed. He then chose not to comply with the terms of the assignment and purchase agreement.
For the foregoing reasons, the opinion of the District Court is affirmed, plaintiff-defendant in reconvention to pay all costs.

AFFIRMED.

. Not only corporeal objects, such as movables and immovables, livestock and produce, may be sold, but also incorporeal things, such as a debt, inheritance, the rights, titles and interests to an inheritance or to any parts thereof, a servitude or any other rights.